**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Raghunath Parthasarathi, et al.,<br><br>    Plaintiffs,<br><br>vs.<br><br>United States of America, et al.,<br><br>    Defendants. | No. CV-21-01940-PHX-SPL<br><br>**ORDER** |

Before the Court is Defendant United States of America's ("Defendant United States") Motion for Summary Judgment and Statement of Facts (Docs. 72 and 73), Defendant State of Arizona's ("State Defendant") Response and Statement of Facts (Docs. 85 and 86), Plaintiffs' Response and Statement of Facts (Docs. 87 and 88), and Defendant United States' Reply (Doc. 93).[1] The Court rules as follow.

**I.    BACKGROUND**

This case involves a two-vehicle car accident on a state highway, State Route ("SR") 67, near the north rim of the Grand Canyon, in which a nonparty at fault struck a cow with her vehicle, causing her to lose control and hit Plaintiffs in a head-on accident. (Doc. 5 at ¶¶ 13–16; Doc. 72 at 1–2). Plaintiffs allege that Defendant United States owed a duty to

---

[1] Defendant United States move to strike the opposing parties' controverting statements of facts (Docs. 86 and 88) because it alleges that portions of the controverting statements of facts amount to legal conclusions, lengthy factual interpretations, arguments, and conclusory statements. (Doc. 93 at 3). The Court will deny Defendant United States' request and disregard any portions of the controverting statements of facts that are not consistent with Local Rule 56.1.

make the land where the accident occurred safe but failed to do so. (Doc. 5 at ¶ 49).

Defendant United States owns the land on which portions of SR 67 is located as well as the surrounding land in the North Kaibab National Forest. (Doc. 5 at ¶ 45; Doc. 11 at ¶ 45). The United States Forest Service (the "USFS") is the federal governmental agency that manages the Kaibab National Forest. (*See* Doc. 72 at 2). The Forest Service Manual ("FSM") provides the USFS with guidelines for managing its agency. (Doc. 72 at 7). Under the FSM, the USFS has authority to administer grazing permits through the Grazing Permit Program ("GPP"). (Doc. 73-2 at 6). The GPP's objective is "[t]o administer the grazing permit system consistent with range resource management objectives found in forest land management plans, and to best serve the public's long-term economic and social needs." (Doc. 73-2 at 6). The FSM also provides that the USFS must "[i]dentify the benefits of public access to [National Forest System] lands and the environmental costs of road-associated effects, taking into account public safety, affordability, and management efficiency." (Doc. 73-15 at 10).

In 2002, the U.S. Department of Transportation, Federal Highway Administration ("FHA") granted the State of Arizona, Department of Transportation ("ADOT") a Highway Easement Deed for SR 67. (Doc. 73-2 at 42–48). The Highway Easement Deed granted the State of Arizona:

> an easement for right-of-way for the construction, operation, and maintenance of a highway and use of the space above and below the established grade line of the highway pavement for highway purposes on, over, across, in, and upon the following described federal land within the United States in the Kaibab National Forest . . ..

(Doc. 73-2 at 43). With respect to the USFS's right to use or authorize the use of any portion of the right-of-way for nonhighway purposes, the agreement provides that the USFS's right:

> shall not be exercised when such use would be inconsistent with the provisions of Title 23 of the United States Code and of the Federal Highway Administration Regulations issued pursuant thereto or would interfere with the free flow of traffic or impair the full use and safety of the highway, and, in any

>case, the GRANTEE and the Federal Highway Administration shall be consulted prior to the exercise of such rights.

(Doc. 73-2 at 44).

Prior to beginning any construction project that could have an effect on the protection and utilization of the land under the administration of the Forest Service, the USFS and ADOT must mutually agree to the projects' plans and specifications. (Doc. 73-2 at 44). Moreover, "[t]he final design and construction specifications for any highway construction project on the right-of-way shall be presented to the Forest Supervisor for approval; construction shall not begin until such approval is given." (Doc. 73-2 at 45).

The USFS allows cattle grazing to occur in the Kaibab National Forest through its GPP. (Doc. 5 at ¶ 48; Doc. 72 at 6). In 2003, ADOT sent a letter to the USFS's district ranger for the North Kaibab National Forest explaining that between 2001 and 2003 there were twelve cows hit on SR 67. (Doc. 86-1 at 3). In the letter, ADOT requested help eliminating vehicle and cattle collisions on SR 67 and listed the following possible solutions:

>1. Fencing the highway right-of-way along the routes and mileposts noted above.
>2. Discontinue grazing in those areas that abut US89A and SR67.
>3. Fence allotment areas so that they do not conflict with highway operations.

(Doc. 86-1 at 3). However, in 2006, during a project assessment field review, the USFS opposed building a right-of-way fence along SR 67 due to conservation concerns. (Doc. 73 at ¶ 9; Doc. 73-10 at 6). More specifically, a representative for the USFS "indicated that constructing a right-of-way fence along SR 67, which is a National Scenic Highway, would disturb the natural beauty of the Kaibab Plateau." (Doc. 73-10 at 6). Furthermore, the USFS concluded that the construction would cause a great disturbance to the forest and its meadows due to the cutting of trees and driving heavy construction equipment through the meadows. (Doc. 73-10 at 6). Ultimately, the USFS determined that the time it would take to restore the forest along with the cost of maintaining the fence outweighed the need to

install a right-of-way fence to reduce car-cow collisions along SR 67. (Doc. 73-10 at 6).

The proposed recommendation ordered the GPP permittee to construct fences "around or near many of the water sources within a mile of SR 67 to exclude livestock access," and to herd away lingering livestock. (Doc. 73-10 at 7). It also prohibited the GPP permittee from placing mineral blocks within a close proximity of SR 67. (Doc. 73-10 at 7). ADOT expressed that there should be no issues with not adding a right-of-way fence if the USFS agreed to eliminate livestock allotments in the affected areas or keep the livestock off the right-of-way by using only those allotment areas that are fenced and away from the highway. (Doc. 73-10 at 7). The field review notes provide that:

> ADOT is obligated by Law to keep livestock off the [right-of-way]. The Project Team needs to continue to work towards a fencing solution, unless the team can work out these issues with the USFS, and find a solution that will keep livestock off the [right-of-way]."

(Doc. 73-10 at 7).

Thereafter, in 2008, ADOT, the FHA, and the USFS executed an Amended Memorandum of Understanding ("MOU") which provided in part that:

> It is the objective of each party to cooperatively design and implement projects that promote transportation efficiency and safety, minimize impacts to the environment and integrate with Forest Service land management plans.

(Doc. 73-5 at 19).

In 2011, the USFS changed its position and determined that a right-of-way fence could be beneficial to public safety after it learned that there were six car-cow accidents on SR 67 in 2010. (Doc. 73 at ¶ 27). The USFS shared this concern with ADOT. (Doc. 73 at 27; Doc. 73-10 at 9–10). In 2012, the USFS learned of an additional five car-cow accidents. (Doc. 73 at ¶ 28). The USFS contacted ADOT again to discuss adding a right-of-way fence along SR 67. (Doc. 73-10 at 13). The USFS expressed that "th[e] fence is a high priority public safety issue" and that the fence would become even more of a factor with the increased cattle beginning the following year. (Doc. 73-10 at 13). However, ADOT determined that the fence "would not have very high priority with the existing budget

4

picture and the fact that this was a low volume, seasonal highway and had a low crash rate with livestock." (Doc. 73-10 at 11).

The National Environmental Policy Act ("NEPA") "directs all federal agencies to consider and report the potential environmental impacts of proposed federal actions." (Doc. 73-9 at 11). Therefore, the USFS must evaluate and report the impacts the GPP has on federal lands through environmental assessments ("EA"). (Doc. 73 at ¶ 22). In 2013, the North Kaibab Ranger District evaluated cattle grazing on the Kane Ranch Allotment, an allotment within the Kaibab, and created its Final Environmental Assessment ("FEA") and adopted EA Alternative No. 1. (Doc. 73 at ¶ 24; Doc. 73-9 at 2–141). EA Alternative No. 1 provides, in part, that:

> A fence may be constructed on the western side of State Highway 67 and only on the western side of the highway. This potential fence consists of two sections, the north and the south. The fence design would follow [Arizona Game and Fish] guidelines to reduce potential wildlife crossing and entrapment concerns. The Northern section of the fence would start near Jacob Lake and would be located 60 to 120 feet from the highway for seventeen miles, ending where the meadows in the South Summer Pasture begin. The primary purpose for the fence would be public safety to respond to the number of car/cow collisions in the North Summer Pasture. Six cows were hit in 2010 and five were hit in 2012 while grazing in the North Summer Pasture. This fence would keep the livestock contained into the Northwest Pasture during the peak May 15 to September 15 Grand Canyon National Park-North Rim visitation season.

(Doc. 73-9 at 18). It further provides that:

> Prior to construction of the north fence, we would test the effectiveness of large flashing signs warning the public of the livestock hazard. If collisions do not decrease from their current rate, then the fence would be built as soon as funding is granted.

(Doc. 73-9 at 18). Thereafter, the North Kaibab Ranger District issued a Final Decision Notice and Finding of No Significant Impact ("FDN/FONSI") for the Kane Ranch Allotment Management Plan EA (Doc. 73-2 at 49–67) and concluded that there was no

need to prepare an environmental impact statement because, in part:
> There will be no significant effects on public health and safety.
> …
> There is little interaction between cattle and people due to the low level of dispersed recreation that occurs in this area. Fences and cattle guards are interspersed across the landscape, and with proposed [sic] the proposed state highway 67 right-of-way fence, the risk of grazing in these areas (be it short term in duration during the year) will pose less risk to public health and safety as discussed in the EA and response to comments.

(Doc. 73-2 at 61).

In 2014 and 2016, the USFS purchased two cow silhouette signs with flashing lights and provided them to ADOT to install on SR 67. (Doc. 87 at 10; Doc. 93-2 at 7–8). The USFS and ADOT never reached an agreement to construct a right-of way fence along SR 67. On August 6, 2019, Plaintiffs were injured in an accident while traveling on SR 67. (Doc. 5 at ¶ 11). Plaintiffs allege that Defendant United States was negligent and at fault for the collision. (Doc. 5 at ¶ 55).

## II.     LEGAL STANDARD

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party can satisfy its burden by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Id*. When considering a motion for summary judgment, a court must view the factual record and draw all reasonable inferences in a light most favorable to the nonmoving party. *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002). When parties file cross-motions for summary judgment, the court must review each motion separately, giving the nonmoving party for each motion the benefit of all reasonable inferences. *Eat Right Foods Ltd. v. Whole Foods Mkt., Inc.*, 880 F.3d 1109, 1118 (9th Cir. 2018).

**III.   DISCUSSION**

Defendant United States claims that summary judgment should be granted in its favor because: (1) its acts and omissions are protected by the Discretionary Function Exception ("DFE") of the Federal Tort Claims Act ("FTCA"); (2) no private person analogue exists under the FTCA for Plaintiffs' claims that the USFS negligently implemented or ran its GPP; (3) Arizona's Recreational Use Statute (A.R.S. § 33-1551) bars Plaintiffs' claims; and (4) Plaintiffs cannot prove proximate cause. For the following reasons, the Court grants Defendant United States's Motion.

    A.   <u>Discretionary Function Exception</u>

"The district court lacks jurisdiction in a suit against the federal government unless Congress has consented to be sued." *S. Delta Water Agency v. U.S., Dep't of Int., Bureau of Reclamation*, 767 F.2d 531, 535 (9th Cir. 1985). Congress enacted the FTCA as a limited waiver of sovereign immunity. *See Lam v. United States*, 979 F.3d 665, 672 (9th Cir. 2020). "The FTCA permits private suits against the United States for damages for loss of property, injury, or death caused by a government employee's negligence." *Id.* The DFE, however, exempts the United States from suit if a claim is "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a).

The Supreme Court established a two-prong test, the *Berkovitsz/Gaubert* test, for applying this "discretionary function exception." *Navarette v. United States*, 500 F.3d 914, 916 (9th Cir. 2007); *see also Berkovitz v. United States*, 486 U.S. 531 (1988); *see also United States v. Gaubert*, 499 U.S. 315 (1991). First, the Court "must determine whether the challenged actions involve an element of judgment or choice." *Terbush v. United States*, 516 F.3d 1125, 1129 (9th Cir. 2008) (internal citation omitted). The exception will not apply if a "federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow," and a mandatory directive ends the inquiry because the employee "has no rightful option but to adhere to the directive." *Berkovitz*, 486 U.S. at 536.

Second, if the action was discretionary, the Court examines whether the decision at issue "is of the kind that the discretionary function exception was designed to shield, namely . . . decisions based on considerations of public policy." *Terbush*, 516 at 1129 (internal citation omitted). "Public policy has been understood to include decisions grounded in social, economic, or political policy." *Id.* (internal citation omitted). "[I]f a regulation allows the employee discretion, the very existence of the regulation creates a strong presumption that a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulations." *Gaubert*, 499 U.S. at 324. The Ninth Circuit has declined to apply the DFE "where the challenged governmental activity involves safety considerations under an established policy rather than the balancing of competing public policy considerations." *Soldano v. United States*, 453 F.3d 1140, 1146 (9th Cir. 2006) (quoting *ARA Leisure Servs. v. United States,* 831 F.2d 193, 195 (9th Cir.1987)).

If both steps are satisfied, the exception applies even if the decision reflects an abuse of discretion. *Terbush*, 516 F.3d at 1135 (citing 28 U.S.C. § 2680(a)). "The focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis." *Gaubert*, 499 U.S. at 325. As a remedial statute, the FTCA should be construed liberally, however, its exceptions should be read narrowly. *Terbush*, 516 F.3d at 1135 (internal quotations omitted) (quoting *O'Toole*, 295 F.3d at 1037); *see also Rayonier Inc. v. United States*, 352 U.S. 315, 320 (1957). A plaintiff bears the burden of showing the court has subject matter jurisdiction under FTCA's general waiver of immunity. *Prescott v. United States*, 973 F.2d 696, 701 (9th Cir. 1992). The United States, however, has the burden of proving one of the FTCA's exceptions to the waiver of immunity applies. *Id.* at 702. "[O]nce the Government [meets] its burden . . . the party opposing [the application of the DFE] ha[s] to present sufficient evidence to withstand dismissal" for lack of jurisdiction. *Blackburn v. United States*, 100 F.3d 1426, 1436 (9th Cir. 1996).

B.  <u>Step One: The USFS's actions involved an element of judgment or choice.</u>

First, the Court must determine whether the USFS's conduct is a matter of choice or judgment. State Defendant and Plaintiffs challenge that Defendant United States had a mandatory duty to install a fence along SR 67 and not interfere with the free flow of traffic or impair the full use and safety of the highway. (Doc. 85 at 6–9; Doc. 87 at 8–9). Defendant United States argues that there is no federal statute, regulation, or established safety policy that mandates the USFS to follow specific procedures for addressing public safety along SR 67. (Doc. 72 at 9). Defendant United States contends that under the FSM, these decisions are left to the discretion of the USFS officials. (Doc. 72 at 9). For example, with respect to road management, the FSM provides that the USFS must identify the benefits of public access to the Kaibab National Forest and the environmental costs of road-associated effects by "taking into account public safety, affordability, and management efficiency." (Doc. 73-15 at 10). The FSM also states that the USFS may administer the grazing permit system "to best serve the public's long-term and economic social needs." (Doc. 73-2 at 6). After weighing the benefits of public access and environmental costs against public safety, affordability, and management efficiency, the USFS decided that the GPP permittee and ADOT would be responsible for herding livestock away from SR 67. ((Doc. 73-10 at 7). The USFS also purchased flashing warning signs to alert vehicles of roaming cattle. (Doc. 93 at 7 n.3). The Court finds that this decision was discretionary because there was no specific public safety directive for the USFS to follow regarding highways adjacent to federal lands with grazing livestock. As such, the Court finds that Defendant United States has met its initial burden of showing that its conduct was a matter of judgment and choice in this case.

State Defendant and Plaintiffs have not presented sufficient evidence to show that Defendant United States failed to follow a mandatory course of action for addressing cattle grazing on federal land adjacent to highways. State Defendant argues that the USFS established management policies through its FEA and FDN/FONSI and the USFS failed to follow the policies outlined within those documents. (Doc. 85 at 6–7). However, as State

9

Defendant concedes in its response, the FEA and FDN/FONSI were the results of the USFS using its discretionary function under the FSM. (Doc. 85 at 6). The USFS used its discretion to decide that "[a] fence *may* be constructed on the western side of State Highway 67, and only on the western side of the highway." (Doc. 73-9 at 18) (emphasis added). The USFS also decided that prior to constructing the fence, it would "test the effectiveness of large flashing signs warning the public of the livestock hazard." (Doc. 73-9 at 18). It also explained that the "potential" fence would only be constructed once funding was granted and if the alternative safety measures were ineffective. (73-9 at 18; Doc. 85 at 7). Additionally, the USFS explained that the southern section of the fence "would not be planned for immediate construction." (Doc. 73-9 at 18). Upon reviewing the entire FEA and FDN/FONSI, it is evident that the USFS was exercising its discretionary function under the FSM while also considering public safety, affordability, and management efficiency. Therefore, the Court concludes that the FEA and FDN/FONSI could not have created a policy mandating the USFS to construct a fence.

Plaintiffs contend that the Highway Easement Deed limits the USFS's discretion. (Doc. 87 at 9). Although the Highway Easement Deed is a legally binding document, Plaintiffs have not provided any legal authority to support their argument that it controls the Defendant United States's discretionary authority under the DFE. Notwithstanding Plaintiffs' lack of legal support, the Highway Easement Deed does not rebut Defendant United States's argument that its conduct was a matter of judgment and choice because the Deed fails to provide a mandatory directive for managing highway safety. Instead, it offers general instructions to (1) comply with the FHA regulations, (2) not interfere with the free flow of traffic, and (3) not impair the full use and safety of the highway. (Doc. 73-2 at 44).

Furthermore, the Highway Easement Deed does not control Defendant United States's discretionary authority because there is evidence showing that the Deed transferred the responsibility for the maintenance and road safety of SR 67 to State Defendant. For example, Chapter 7703.5 of the FSM provides that "[r]oads and trails for which the Forest Service has granted a legally documented right-of-way to a federal, state, county, or local

public road authority" are under the jurisdiction of those other entities. (Doc. 73-15 at 16). In addition, Chapter 7705 defines a national forest system road as "[a] forest road *other than* a road which has been authorized by a legally documented right-of-way held by a state, country, or local public road authority." (Doc. 73-15 at 22 (emphasis added); Doc. 88-1 at 13). More importantly, the Highway Easement Deed itself supports that ADOT is responsible for managing the right-of-way road. For example, the Deed requires ADOT to obtain permission prior to making any changes to the land where the right-of-way is located. Furthermore, the MOU clarified that ADOT is "responsible for the design, construction, operation, maintenance and management of the State highway system in Arizona," and that ADOT's objective was "to provide a safe and efficient transportation system." (Doc. 73-5 at 19). Since there was no mandatory directive for the USFS to follow a safety policy to address cattle grazing along SR 67, it was appropriate for the USFS to exercise its discretionary function. *See Kennewick Irrigation Dist. v. United States,* 880 F.2d 1018, 1026 (9th Cir.1989) (holding that a "general statutory duty to promote safety" is insufficient to show that the government lacked discretion); *see also Green v. United States*, 630 F.3d 1245, 1250 (9th Cir. 2011) ("An agency must exercise judgment or choice where no statute or agency policy dictates the precise manner in which the agency is to complete the challenged task.").

   C. Step Two: The USFS's actions were grounded in public policy.

Having determined that the USFS's failure to construct a fence along SR 67 did not contravene a prescriptive federal statute, regulation, or policy, the Court must now consider whether the USFS's actions reflect the exercise of judgment grounded in public policy. Without an established safety policy, the USFS balanced environmental costs with public safety and determined that the need to protect the natural state of the land outweighed the need to build a right-of-way fence. As such, the USFS rejected ADOT's request to add a right-of-way fence along SR 67 because the construction of the fence would disturb the natural beauty of the Kaibab Plateau, cause a great disturbance to the forest and its meadows, and require significant maintenance. The USFS also concluded that it would

take a long period of time to restore the land to its natural state. Thus, the USFS ordered the GPP permittee to herd away lingering livestock and construct fences near the water sources located within a mile of SR 67.

Thereafter, the USFS reevaluated the public safety concern. Although the USFS and ADOT expressed that the car-cow collisions were not a significant public concern (Doc. 73-2 at 61; Doc. 73-10 at 13), the USFS decided to install flashing signs warning the public of the livestock hazard. The USFS determined that it would test whether the signs would effectively decrease the rate of car-cow collisions. The USFS concluded that if there was no decrease, it would only allow for a right-of-way fence to be built on the northwest side of SR 67. The Court finds that the DFE is applicable in this case because the USFS made policy-based decisions using its best judgment. *See Soldano*, 453 F.3d at 1147 ("Because the challenged conduct clearly implicated a choice between the competing policy considerations of maximizing access to and preservation of natural resources versus the need to minimize potential safety hazards, it fell within the discretionary function exception.") (internal quotations and citations omitted) (cleaned up). As such, the Court may not second-guess the USFS's decision to not build a right-of-way fence. *See ARA Leisure Servs.*, 831 F.2d at 194 ("The purpose of the exception is to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social economic, and political policy through the medium of an action in tort." (internal quotations and citations omitted)); *see also Cleveland v. United States*, 546 F. Supp. 2d 732, 765 (N.D. Cal. 2008) ("the discretionary function exception forbids the district court from second-guessing what inspection and maintenance program best accommodates the goal of safety and the reality of finite resources, as there is no mandated policy for the Forest Service to monitor temporary signs and fencing."). Thus, the Court lacks subject matter jurisdiction over Defendant United States.

Accordingly,

**IT IS THEREFORE ORDERED** that Defendant United States's Motion for Summary Judgment is **granted**.

**IT IS FURTHER THEREFORE ORDERED** that Defendant United States of America is **dismissed** as a party from this action.

Dated this 22nd day of August, 2024.

　　　　　　　　　　　　　　　　　　　　　　Honorable Steven P. Logan
　　　　　　　　　　　　　　　　　　　　　　United States District Judge